UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEITH TOWNSEND, individually and all others similarly situated, | ) ) ) ) CLASS ACTION COMPLAINT |
| Plaintiff, | ) ) JURY TRIAL DEMANDED |
| v. | ) ) Case No. 1:23-cv-00861 |
| MUNCIE SANITARY DISTRICT, STEPHEN BRAND, ADAM LEACH, TIM OVERTON, DAVID SMITH, and MICHAEL WOLFE, | ) ) ) ) ) ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

This class action is brought by Plaintiff, Keith Townsend ("Plaintiff"), individually and on behalf of all others similarly situated (collectively, the "Property Owners"), under Rule 23 of the Federal Rules of Civil Procedure, against Defendants, Muncie Sanitary District, Stephen Brand, Adam Leach, Tim Overton, David Smith, and Michael Wolfe, and Plaintiff respectfully shows the Court as follows:

### I.   PARTIES

1.   Plaintiff, Keith Townsend, is a natural person residing in Marion County, Indiana, and the owner of real property in Muncie, Delaware County, Indiana.

2.   Defendant, Muncie Sanitary District, is a special unit of government created under Indiana State law by the action of an Ordinance of the City of Muncie, Indiana adopted in 1968. MSD is managed under the provisions of Ind. Code § 36-9-25.

3.   Defendants, Stephen Brand, Adam Leach, Tim Overton, David Smith and Michael Wolfe, are all members of the five-person Board of Sanitary Commissioners which acts as both

the Executive Body and Fiscal Body of the Muncie Sanitary District. (All Defendants are hereinafter collectively referred to as the "MSD").

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345.

5. This Court has personal jurisdiction over MSD because MSD is located within the State of Indiana.

6. Venue is proper under 28 U.S.C. § 1391(b) because the MSD is located in the Southern District of Indiana and all of the events, actions, or omissions giving rise to these claims occurred in the Southern District of Indiana.

## III. FACTUAL ALLEGATIONS

7. There are numerous persons that rent or otherwise occupy real property owned by the Property Owners who have water service turned on their names which in turn causes the MSD to turn on and bill sewer services in their names through the MSD. (These persons are hereinafter referred to as the "MSD Customers").

8. The MSD does not, in conjunction with turning on the sewer service for the MSD Customers, immediately begin sending sewer bills to the MSD Customers. As a result, by the time the MSD Customers receive a bill from the MSD, the MSD Customers sewer bill is already delinquent which allows the MSD to collect penalties and interest.

9. The MSD seeks and does in fact receive payments for delinquent sewer bills plus penalties and interest from both the MSD Customers and the Property Owners, which results in double payments to the MSD.

10. Pursuant to Ind. Code § 36-9-25-11.1, the MSD is authorized to "require the users of the sewage service to make a reasonable deposit in advance of a connection or reconnection to

the sewerage system to secure payment of the fees. The deposit may not exceed thirty-three percent (33%) of the estimated annual cost of the service for a particular user."

11. As shown above, the MSD has the power to collect a security deposit from any of the MSD Customers that it deems to be a credit risk, but MSD fails and refuses to exercise this power, which causes damages to the Property Owners. By way of example and without limitation, Property Owners receive a delinquent bill for an MSD Customer that could and should be paid from a security deposit collected by the MSD. Instead, the Property Owners are forced to pay the bills of the MSD Customers.

12. MSD repeatedly and regularly fails to bill its end users, which include the MSD Customers.

13. Pursuant to Ind. Code § 36-9-25-11.5, the MSD "may require that the water utility providing water service to a delinquent user discontinue service until payment of all overdue user fees, together with any penalties provided in this section, are received by the municipality."

14. The MSD has in the past taken the proper steps to discontinue the water service of MSD users who are delinquent in the in the payments of the users' sewer bills.

15. The Property Owners receive delinquent sewer bills in the mail from the MSD that are in the names of the MSD Customers.

16. The MSD bills that are sent to the Property Owners show that the MSD Customers are delinquent in their payments to the MSD.

17. The Property Owners have requested the MSD to turn off the sewer utility service for the MSD Customers who are delinquent in their payments to the MSD.

18. MSD has informed the Property Owners that they need to pay the MSD Customers' delinquent invoices, or the delinquent amount will be added to the Property Owners tax bills.

19. Property Owners are being forced to pay the bills of the MSD Customers along with penalties and interest in circumstances where the MSD has not timely billed the MSD Customers, the Property Owners did not have the sewer utility service turned on in the MSD Customers names and the Property Owners are not allowed to shut it off, but the MSD is authorized to do so but fails to do so in order to force the Property Owners to pay the delinquent sewer utility bills along with interest and penalties.

20. By forcing the Property Owners to pay delinquent sewer utility bills of the MSD Customers, the MSD is violating the Property Owners' due process and equal protection guarantees of the Fourteenth Amendment.

21. The MSD's routine violation of the constitutional and statutory rights of the Property Owners is a means to generate revenue for the MSD.

22. The MSD's routine violation of the constitutional and statutory rights of the Property Owners as a means to generate revenue for the MSD is ongoing and pervasive.

23. Upon payment of the liens (plus interest and penalties) and the delinquent sewer utility bills by the Property Owners, the MSD still seeks and receives payment of the delinquent sewer utility bills directly from the MSD Customers.

24. The MSD does not refund to the Property Owners the amounts which the MSD receives from the MSD Customers in payment for the delinquent sewer utility bills. As a result, the MSD receives double payment for the MSD Customers' delinquent sewer utility bills.

### IV.  CLASS ALLEGATIONS

25. This action is brought individually, and on behalf of the following proposed class (the "Class"), under Rule 23 of the Federal Rules of Civil Procedure:

> All persons and entities that paid for liens placed on their real estate by the MSD because of the delinquent sewer bills of the MSD Customers and all persons and

entities that paid delinquent sewer bills from the MSD which had already been paid as result of a lien being paid and satisfied by the Property Owners.

26. This proposed definition may be altered or amended as the lawsuit proceeds.

27. This action is properly maintainable as a class action under Rule 23(A) of the Federal Rules of Civil Procedure.

28. The class consists of hundreds or thousands of persons throughout the State, such that joinder of all Class members is impracticable.

29. There are questions of law and fact that are common to the Class members, including the common course of conduct by MSD.

30. The claims of Plaintiff are typical of the claims of the proposed Class because they are based on the same legal theories, and there are no interests of Plaintiff that are antagonistic to the interests of the Class members.

31. The interests of the Class members will be fairly and adequately protected by Plaintiff and competent legal counsel experienced in class actions and complex litigation has been retained to represent Plaintiff and the Class.

32. This action is properly maintainable as a class action under Rule 23(b)(3) because questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

33. The questions of law and fact common to the Class predominate over any questions affecting only individual Class members, particularly because the focus of the litigation will be on the conduct of the MSD.

34. The predominant questions of law and fact in this litigation include, but are not limited to: (i) whether the MSD's actions violate the Property Owners due process and equal

protection guarantees of the Fourteenth Amendment; (ii) whether the MSD also collected the amounts paid by the Property Owners from the MSD Customers ; (iii) whether the MSD slandered the title of the real estate owned by the Property Owners; and (iv) the type and amount of relief to which the Class members are entitled.

35. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of hundreds of individual lawsuits would not be economically feasible for individual Class members and would cause a strain on judicial resources, yet each Class member would be required to prove an identical set of facts in order to recover damages.

36. No other persons who fall within the Class definition set forth above are pursuing similar litigation, such that individual Class members do not wish to control the prosecution of separate actions.

37. This class action does not present any unique management difficulties.

## V. INDIVIDUAL AND CLASS CLAIMS FOR RELIEF

### A. Equal Protection

38. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

39. The Equal Protection Clause of the Fourteenth Amendment prohibits the MSD from "deny[ing] to any person within its jurisdiction the equal protection of the laws."

40. The MSD's pattern or practice of unconstitutional conduct is caused by the MSD's focus on generating revenue for the MSD.

41. The MSD has engaged and continues to engage in a pattern or practice of conduct that deprives the Property Owners of their rights under the Fourteenth Amendment to the United States Constitution.

### B. Fraud

42. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

43. The MSD made one or more material misrepresentations concerning the amount of sewer fees plus penalties and interest owed by the MSD Customers and the Property Owners.

44. The MSD knew its misrepresentations were untrue or made such misrepresentations with reckless ignorance of their falsity.

45. The MSD made such misrepresentation(s) with the intent to deceive Plaintiff and other Class members.

46. Plaintiff and other Class members rightfully relied on such misrepresentations.

47. Such misrepresentations by the MSD and rightful reliance by Plaintiff and Class members proximately caused injury and/or damage to Plaintiff and Class members in an amount to be proved at trial.

### C. Unjust Enrichment/Money Had and Received

48. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

49. The MSD has requested, received, and retained funds from the Property Owners under such circumstances that in equity and good conscience the MSD ought not to retain those funds.

50. The MSD should be required to provide restitution of the improperly received and retained funds to the Property Owners.

### D. Slander of Title

51. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

52. Pursuant to Ind. Code § 36-9-23-33(d), the MSD "shall then mail to each property owner on the list or on an individual instrument a notice stating that a lien against the owner's property has been recorded."

53. The furnishing of the notice is a condition to the right of acquiring a lien upon the real estate owned by the Property Owners.

54. Without notifying the owner properly pursuant to statute, the MSD has no right to a lien on the real estate owned by the Property Owners.

55. Accordingly, the MSD has slandered the title of the real estate owned by the Property Owners by recording a lien without complying with the notice requirements of Ind. Code § 36-9-23-33(d).

**E. Action for Accounting**

56. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

57. Under the circumstances of this case, equity demands that Plaintiff, the Class and the Court receive information sufficient to determine: (i) the amounts paid to the MSD by the Property Owners for the delinquent bills of the MSD Customers; and (ii) whether the MSD also collected the amounts paid by the Property Owners from the MSD Customers.

58. In order to render complete justice for Plaintiff and the Class in one action, the Court should order a thorough and complete accounting by the MSD of the identity, extent and duration of any liens, penalties and interest imposed by the MSD against the Property Owners and billing to and payments made by the MSD Customers for the same amounts paid by the Property Owners on their tax bills.

## II. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Keith Townsend, individually and on behalf and all others similarly situated, respectfully requests:

A. Certification of the Class requested above and appointment of Plaintiff as the Class Representative and counsel for Plaintiff as Class Counsel;

B. An award of damages to Plaintiff and Class members;

C. An award of restitution or disgorgement to Plaintiff and Class members;

D. An award of costs, attorneys' fees, and expenses as permitted by law;

E. The entry of judgment against Defendants and in favor of Plaintiff and Class members in the amount of the relief requested herein; and

F. All other relief that the Court finds just and proper.

## III. JURY DEMAND

Trial by jury is hereby demanded.

Dated: May 17, 2023

Respectfully submitted,

MORSE & BICKEL, P.C.

*/s/ John J. Morse*
John J. Morse, Atty. No. 16146-49

*Attorney for Plaintiff and Proposed Class*

MORSE & BICKEL, P.C.
1411 Roosevelt Avenue
Suite 102
Indianapolis, IN  46201
Phone: (317) 686-1540
Fax: (317) 630-2790
Morse@MorseBickel.com