# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| KEITH TOWNSEND, individually and all others similarly situated, | ) ) ) |
| Plaintiff, | ) Cause No. 1:23-cv-00861-RLY-MKK ) ) |
| v. | ) ) |
| MUNCIE SANITARY DISTRICT, STEPHEN BRAND, ADAM LEACH, TIM OVERTON, DAVID SMITH, and MICHAEL WOLFE, | ) ) ) ) ) |
| Defendants. | ) |

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

Come now the Defendants (collectively, "MSD"), by counsel, and for their Answer and Affirmative Defenses to Plaintiff's Amended Class Action Complaint, state:

### I. PARTIES

1. Plaintiff, Keith Townsend, is a natural person residing in Marion County, Indiana, and the owner of real property in Muncie, Delaware County, Indiana.

    ANSWER: MSD admits the allegations contained in Paragraph 1.

2. Defendant, Muncie Sanitary District, is a special unit of government created under Indiana State law by the action of an Ordinance of the City of Muncie, Indiana adopted in 1968. MSD is managed under the provisions of Ind. Code § 36-9-25.

    ANSWER: MSD admits the allegations contained in Paragraph 2.

1

3. Defendants, Stephen Brand, Adam Leach, Tim Overton, David Smith and Michael Wolfe, are all members of the five-person Board of Sanitary Commissioners which acts as both the Executive Body and Fiscal Body of the Muncie Sanitary District. (All Defendants are hereinafter collectively referred to as the "MSD").

ANSWER: MSD admits the allegations contained in Paragraph 3.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345.

ANSWER: MSD admits the allegations contained in Paragraph 4.

5. This Court has personal jurisdiction over MSD because MSD is located within the State of Indiana.

ANSWER: MSD admits the allegations contained in Paragraph 5.

6. Venue is proper under 28 U.S.C. § 1391(b) because the MSD is located in the Southern District of Indiana and all of the events, actions, or omissions giving rise to these claims occurred in the Southern District of Indiana.

ANSWER: MSD denies that any events, actions, or omissions give rise to any claims, but generally admits that venue is proper in the South District of Indiana for the alleged claims.

## III. FACTUAL ALLEGATIONS

7. There are numerous persons that rent or otherwise occupy real property owned by the Property Owners who have water service turned on their names which in turn causes the MSD to turn on and bill sewer services in their names through the MSD. (These persons are hereinafter referred to as the "MSD Customers").

ANSWER: MSD generally admits the allegations contained in Paragraph 7 and further states that water service is provided by Indiana American Water Company, Inc. ("American

2

Water").

8. The MSD does not, in conjunction with turning on the sewer service for the MSD Customers, immediately begin sending sewer bills to the MSD Customers. As a result, by the time the MSD Customers receive a bill from the MSD, the MSD Customers sewer bill is already delinquent which allows the MSD to collect penalties and interest.

ANSWER: MSD denies the allegations in Paragraph 8 and further states that MSD is reliant on receiving customer information from American Water after the customer registers for water service themself. MSD then generates an initial bill typically received within 2-3 weeks. MSD has never sent a first bill as "delinquent."

9. The MSD seeks and does in fact receive payments for delinquent sewer bills plus penalties and interest from both the MSD Customers and the Property Owners, which results in double payments to the MSD.

ANSWER: MSD admits that it receives payments from MSD Customers and/or Property Owners, but denies receiving any "double payments." Any overpayments result in a credit to the registered account.

10. Pursuant to Ind. Code § 36-9-25-11.1, the MSD is authorized to "require the users of the sewage service to make a reasonable deposit in advance of a connection or reconnection to the sewerage system to secure payment of the fees. The deposit may not exceed thirty-three percent (33%) of the estimated annual cost of the service for a particular user."

ANSWER: Paragraph 10 states a legal conclusion and the Indiana Code speaks for itself, therefore no response is required. To the extent a response is required, MSD denies the allegations contained in Paragraph 10. MSD further states that although MSD may collect a deposit, it is not required to do so, and doing so would be impracticable if not impossible since MSD is reliant on receiving customer information from American Water after the customer

registers for water service himself.

11. As shown above, the MSD has the power to collect a security deposit from any of the MSD Customers that it deems to be a credit risk, but MSD fails and refuses to exercise this power, which causes damages to the Property Owners. By way of example and without limitation, Property Owners receive a delinquent bill for an MSD Customer that could and should be paid from a security deposit collected by the MSD. Instead, the Property Owners are forced to pay the bills of the MSD Customers.

ANSWER: MSD admits that it does not elect to exercise its discretionary security deposit power(s), but denies the remainder of Paragraph 11.

12. MSD repeatedly and regularly fails to bill its end users, which include the MSD Customers.

ANSWER: MSD denies the allegations contained in Paragraph 12.

13. Pursuant to Ind. Code § 36-9-25-11.5, the MSD "may require that the water utility providing water service to a delinquent user discontinue service until payment of all overdue user fees, together with any penalties provided in this section, are received by the municipality."

ANSWER: Paragraph 13 states a legal conclusion and the Indiana Code speaks for itself, therefore no response is required. To the extent a response is required, MSD denies the allegations contained in Paragraph 13.

14. The MSD has in the past taken the proper steps to discontinue the water service of MSD users who are delinquent in the payments of the users' sewer bills.

ANSWER: MSD admits the allegations contained in Paragraph 14.

15. The Property Owners receive delinquent sewer bills in the mail from the MSD that are in the names of the MSD Customers.

ANSWER: MSD admits the allegations contained in Paragraph 15.

16. The MSD bills that are sent to the Property Owners show that the MSD Customers are delinquent in their payments to the MSD.

ANSWER: MSD admits the allegations contained in Paragraph 16 and further states the bill references the service address and name(s) on the account.

17. The Property Owners have requested the MSD to turn off the sewer utility service for the MSD Customers who are delinquent in their payments to the MSD.

ANSWER: MSD admits that although it is an exceptional occurrence, it has occurred. If the Property Owner(s) request the action, although MSD cannot turn off the sewer service, it has requested American Water discontinue water which in turn ceases MSD billing.

18. MSD has informed the Property Owners that they need to pay the MSD Customers' delinquent invoices, or the delinquent amount will be added to the Property Owners tax bills.

ANSWER: MSD admits that it informs its customers, Property Owners, and the public generally that outstanding balances may result in tax liens. MSD further states that Property Owners are sent delinquent invoices at the record address prior to any such liens being filed.

19. Property Owners are being forced to pay the bills of the MSD Customers along with penalties and interest in circumstances where the MSD has not timely billed the MSD Customers, the Property Owners did not have the sewer utility service turned on in the MSD Customers names and the Property Owners are not allowed to shut it off, but the MSD is authorized to do so but fails to do so in order to force the Property Owners to pay the delinquent sewer utility bills along with interest and penalties.

ANSWER: MSD denies the allegations contained in Paragraph 19.

20. By forcing the Property Owners to pay delinquent sewer utility bills of the MSD Customers, the MSD is violating the Property Owners' due process and equal protection

guarantees of the Fourteenth Amendment.

ANSWER: Paragraph 20 states a legal conclusion and therefore no response is required. To the extent a response is required, MSD denies the allegations contained in Paragraph 20.

21. The MSD has illegally and improperly "moved" sewer liens from the parcel of real estate where the sewer services were provided to another parcel of real estate for the sole purpose of forcing the Property Owners to pay said liens.

ANSWER: MSD denies the allegations contained in Paragraph 21.

22. The MSD's routine violation of the constitutional and statutory rights of the Property Owners is a means to generate revenue for the MSD.

ANSWER: MSD denies the allegations contained in Paragraph 23.

23. The MSD's routine violation of the constitutional and statutory rights of the Property Owners as a means to generate revenue for the MSD is ongoing and pervasive.

ANSWER: MSD denies the allegations contained in Paragraph 23.

24. Pursuant to Ind. Code § 36-9-23-33(d), the MSD "shall then mail to each property owner on the list or on an individual instrument a notice stating that a lien against the owner's property has been recorded."

ANSWER: Paragraph 24 states a legal condition and the Indiana Code speaks for itself, therefore no response is required. To the extent a response is required, MSD denies the allegations contained in Paragraph 24.

25. The furnishing of the notice is a condition to the right of acquiring a lien upon the real estate owned by the Property Owners.

ANSWER: MSD denies the allegations contained in Paragraph 25.

26. Without notifying the owner properly pursuant to statute, the MSD has no right to record a lien on the real estate owned by the Property Owners.

ANSWER: MSD denies the allegations contained in Paragraph 26.

27. The MSD's liens on the real estate owned by the Property Owners are all invalid because the MSD has failed to provide the required statutory notice to the Property Owners.

ANSWER: MSD denies the allegations contained in Paragraph 27.

28. Because the MSD fails to provide the required statutory notice to the Property Owners, the liens remain unpaid and the amount of the unpaid liens along with additional penalties and interest are added/transferred to the property tax bills for the real estate owned by the Property owners.

ANSWER: MSD denies the allegations contained in Paragraph 28.

29. Because the Property Owners do not receive the required statutory notice from the MSD, the sewer liens remain unpaid and the unpaid sewer liens are added/transferred to the Property Owners' property tax bills, which results in a delinquent tax obligation (including penalties and interest) on the Property Owners' tax bills.

ANSWER: MSD denies the allegations contained in Paragraph 29.

30. Upon payment of the liens (plus interest and penalties) and the delinquent sewer utility bills by the Property Owners, the MSD still seeks and receives payment of the delinquent sewer utility bills directly from the MSD Customers.

ANSWER: MSD denies the allegations contained in Paragraph 30.

31. The MSD does not refund to the Property Owners the amounts which the MSD receives from the MSD Customers in payment for the delinquent sewer utility bills. As a result, the MSD receives double payment for the MSD Customers' delinquent sewer utility bills.

ANSWER: MSD denies the allegations contained in Paragraph 31. Any overpayments result in a credit to the registered account.

## IV. CLASS ALLEGATIONS

32. This action is brought individually, and on behalf of the following proposed class (the "Class"), under Rule 23 of the Federal Rules of Civil Procedure:

> All persons and entities that paid for liens placed on their real estate by the MSD because of the delinquent sewer bills of the MSD Customers and all persons and entities that paid delinquent sewer bills from the MSD which had already been paid as result of a lien being paid and satisfied by the Property Owners.

ANSWER: MSD denies that this is a proper class action.

33. This proposed definition may be altered or amended as the lawsuit proceeds.

ANSWER: Paragraph 33 states a legal conclusion and therefore no response is required. To the extent a response is required, MSD denies the allegations contained in Paragraph 33.

34. This action is properly maintainable as a class action under Rule 23(A) of the Federal Rules of Civil Procedure.

ANSWER: MSD denies the allegations contained in Paragraph 34.

35. The class consists of hundreds or thousands of persons throughout the State, such that joinder of all Class members is impracticable.

ANSWER: MSD denies that this is a proper class action and further states that individual questions predominate over any putative class allegations.

36. There are questions of law and fact that are common to the Class members, including the common course of conduct by MSD.

ANSWER: MSD denies that there are questions of fact, but admits the remainder of Paragraph 36.

37. The claims of Plaintiff are typical of the claims of the proposed Class because they are based on the same legal theories, and there are no interests of Plaintiff that are antagonistic to

8

the interests of the Class members.

ANSWER: MSD denies the allegations contained in Paragraph 37.

38. The interests of the Class members will be fairly and adequately protected by Plaintiff and competent legal counsel experienced in class actions and complex litigation has been retained to represent Plaintiff and the Class.

ANSWER: MSD is without knowledge or information sufficient to form a belief as to Plaintiff and counsel's competence, and therefore denies the allegations contained in Paragraph 38.

39. This action is properly maintainable as a class action under Rule 23(b)(3) because questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

ANSWER: MSD denies the allegations contained in Paragraph 39.

40. The questions of law and fact common to the Class predominate over any questions affecting only individual Class members, particularly because the focus of the litigation will be on the conduct of the MSD.

ANSWER: MSD denies the allegations contained in Paragraph 40.

41. The predominant questions of law and fact in this litigation include, but are not limited to: (i) whether the MSD's actions violate the Property Owners due process and equal protection guarantees of the Fourteenth Amendment; (ii) whether the MSD also collected the amounts paid by the Property Owners from the MSD Customers; (iii) whether the MSD slandered the title of the real estate owned by the Property Owners; and (iv) the type and amount of relief to which the Class members are entitled.

ANSWER: MSD denies that (i) it violated any constitutional rights of Property

Owners; (ii) it collected any "double payments" or failed to apply credits to any overpayments; (iii) it slandered any title(s); and (iv) Plaintiff or any Class members are entitled to any relief.

42. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of hundreds of individual lawsuits would not be economically feasible for individual Class members and would cause a strain on judicial resources, yet each Class member would be required to prove an identical set of facts in order to recover damages.

ANSWER: MSD denies the allegations contained in Paragraph 42.

43. No other persons who fall within the Class definition set forth above are pursuing similar litigation, such that individual Class members do not wish to control the prosecution of separate actions.

ANSWER: MSD admits that this is the first such lawsuit.

44. This class action does not present any unique management difficulties.

ANSWER: MSD denies the allegations contained in Paragraph 44 and states that production of records presents unique management difficulties, as well as sorting out specific ownership and tenancy issues related to specific accounts. MSD further states once again that MSD is reliant on receiving customer information from American Water after the customer registers for water service themself. MSD then generates its invoice based on the customer information given.

## V. INDIVIDUAL AND CLASS CLAIMS FOR RELIEF

### A. Equal Protection

45. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

ANSWER: MSD incorporates by reference its Answers contained in the preceding

paragraphs as if fully set forth herein.

46. The Equal Protection Clause of the Fourteenth Amendment prohibits the MSD from "deny[ing] to any person within its jurisdiction the equal protection of the laws."

ANSWER: MSD admits the allegations contained in Paragraph 46.

47. The MSD's pattern or practice of unconstitutional conduct is caused by the MSD's focus on generating revenue for the MSD.

ANSWER: MSD denies the allegations contained in Paragraph 47.

48. The MSD has engaged and continues to engage in a pattern or practice of conduct that deprives the Property Owners of their rights under the Fourteenth Amendment to the United States Constitution.

ANSWER: MSD denies the allegations contained in Paragraph 48.

**B. Fraud**

49. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

ANSWER: MSD incorporates by reference its Answers contained in the preceding paragraphs as if fully set forth herein.

50. The MSD knowingly, intentionally and willfully fails to provide the Property Owner with the required statutory notice of the sewer liens that the MSD records against the real property owned by the Property Owners.

ANSWER: MSD denies the allegations contained in Paragraph 50.

51. The MSD collects payments from the MSD Customers for sewer fees, penalties and interest b ut fails to credit the amounts for these payments to the liens that the MSD has placed on the Property Owners' properties.

ANSWER: MSD denies the allegations contained in Paragraph 51.

52. After receiving payments from the MSD Customers for amounts that are included in the liens placed on the Property Owners' properties, the MSD fails to decrease the amount of its liens to reflect payments made by the MSD Customers.

ANSWER: MSD denies the allegations contained in Paragraph 52

53. After receiving payments from the MSD Customers for amounts that are included in the liens placed on the Property Owners' properties, the MSD still requires the Property Owners to make full payment of the amount of its liens plus penalties and interest even though the MSD has received payments for amounts included in the liens from the MSD Customers.

ANSWER: MSD denies the allegations contained in Paragraph 53.

54. Excess amounts received by the MSD because of the double payments made by the Property Owners and the MSD Customers were improperly retained by the MSD and were not refunded to either the Property Owners or the MSD Customers.

ANSWER: MSD denies the allegations contained in Paragraph 54.

55. After improperly retaining the aforementioned excess payments, the MSD claims that it applies those excess payments to the MSD Customers accounts, when those funds should be refunded.

ANSWER: MSD denies the allegations contained in Paragraph 55.

56. All of the foregoing is and was done by the MSD without the consent by and knowledge of the MSD Customers and the Property Owners and without any notice to the MSD Customers and the Property Owners.

ANSWER: MSD denies the allegations contained in Paragraph 56.

57. The MSD made one or more material misrepresentations concerning the amount of sewer fees plus penalties and interest owed by the MSD Customers and the Property Owners.

ANSWER: MSD denies the allegations contained in Paragraph 57.

58. The MSD knew its misrepresentations were untrue or made such misrepresentations with reckless ignorance of their falsity.

ANSWER: MSD denies the allegations contained in Paragraph 58.

59. The MSD made such misrepresentation(s) with the intent to deceive Plaintiff and other Class members.

ANSWER: MSD denies the allegations contained in Paragraph 59.

60. Plaintiff and other Class members rightfully relied on such misrepresentations.

ANSWER: MSD denies the allegations contained in Paragraph 60.

61. Such misrepresentations by the MSD and rightful reliance by Plaintiff and Class members proximately caused injury and/or damage to Plaintiff and Class members in an amount to be proved at trial.

ANSWER: MSD denies the allegations contained in Paragraph 61.

**C. Constructive Fraud**

62. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Amended Complaint.

ANSWER: MSD incorporates by reference its Answers contained in the preceding paragraphs as if fully set forth herein.

63. By virtue of the relationship between the MSD and the Property Owners and the MSD Customers, and the reliance the Property Owners and the MSD Customers placed on MSD's superior knowledge and expertise regarding the MSD's sewer fees billing and collection, the MSD had a duty of good faith and fair dealing toward the Property Owners and the MSD Customers.

ANSWER: Paragraph 63 states a legal condition, therefore no response is required. To the extent a response is required, MSD generally admits MSD has a duty of good faith, but denies

such duty was breached in any way.

64. The following misrepresentations and omissions by the MSD were made to the Property Owners and the MSD Customers in violation of the aforementioned duty:

a. The MSD knowingly, intentionally and willfully fails to provide the Property Owner with the required statutory notice of eth sewer liens that the MSD records against the real property owned by the Property Owners.

b. The MSD collects payments from the MSD Customers for sewer fees, penalties and interest but fails to credit the amounts for these payments to the liens that the MSD has placed on the Property Owners' properties.

c. After receiving payments from the MSD Customers for amounts that are included in the liens placed on the Property Owners properties, the MSD fails to decrease the amount of its liens to reflect payments made by the MSD Customers.

d. After receiving payments from the MSD Customers for amounts that are included in the liens placed on the Property Owners properties, the MSD still requires the Property Owners to make full payment of the amount of its liens plus penalties and interest even though the MSD has received payments for amounts included in the liens from the MSD Customers.

e. Excess amounts received by the MSD because of the double payments made by the Property Owners and the MSD Customers were improperly retained by the MSD and were not refunded to either the Property Owners or the MSD Customers.

f. After improperly retaining the aforementioned excess payments, the MSD claims that it applies those excess payments to the MSD Customers accounts, when those funds should be refunded.

g. All of the foregoing is and was done by the MSD without the consent by and knowledge of the MSD Customers and the Property Owners and without any notice to the MSD

Customers and the Property Owners.

ANSWER: MSD denies the allegations contained in Paragraph 64.

65. The Plaintiff and the Class members relied upon the foregoing misrepresentations and omissions in making payments to the MSD.

ANSWER: MSD denies the allegations contained in Paragraph 65.

66. Plaintiff and the Class members would have paid less to the MSD, if they had been advised of the information contained in the foregoing omissions.

ANSWER: MSD denies the allegations contained in Paragraph 66.

67. Plaintiff and the Class members have been injured because they have made double payments to the MSD and made payments for sewer charges that were not due and owing.

ANSWER: MSD denies the allegations contained in Paragraph 67.

68. The MSD used its superior knowledge and representations and omissions to gain an advantage over the Plaintiff and the Class members.

ANSWER: MSD denies the allegations contained in Paragraph 68.

69. Plaintiff the the Class members are entitled to damages and all other relief allowed by law for MSD's constructive fraud.

ANSWER: MSD denies the allegations contained in Paragraph 69.

**D. Unjust Enrichment/Money Had and Received**

70. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

ANSWER: MSD incorporates by reference its Answers contained in the preceding paragraphs as if fully set forth herein.

71. The MSD has requested, received, and retained funds from the Property Owners under such circumstances that in equity and good conscience the MSD ought not to retain those

funds.

ANSWER: MSD denies the allegations contained in Paragraph 71.

72. The MSD should be required to provide restitution of the improperly received and retained funds to the Property Owners.

ANSWER: MSD denies the allegations contained in Paragraph 72.

**E. Slander of Title**

73. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

ANSWER: MSD incorporates by reference its Answers contained in the preceding paragraphs as if fully set forth herein.

74. Pursuant to Ind. Code § 36-9-23-33(d), the MSD "shall then mail to each property owner on the list or on an individual instrument a notice stating that a lien against the owner's property has been recorded."

ANSWER: Paragraph 74 states a legal conclusion and the Indiana Code speaks for itself, therefore no response is required. To the extent a response is required, MSD denies the allegations contained in Paragraph 74.

75. The furnishing of the notice is a condition to the right of acquiring a lien upon the real estate owned by the Property Owners.

ANSWER: MSD denies the allegations contained in Paragraph 75.

76. Without notifying the owner properly pursuant to statute, the MSD has no right to a lien on the real estate owned by the Property Owners.

ANSWER: MSD denies the allegations contained in Paragraph 76.

77. Accordingly, the MSD has slandered the title of the real estate owned by the Property Owners by recording a lien without complying with the notice requirements of Ind. Code

§ 36-9-23-33(d).

ANSWER: MSD denies the allegations contained in Paragraph 77.

E. Action for Accounting

78. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

ANSWER: MSD incorporates by reference its Answers contained in the preceding paragraphs as if fully set forth herein.

79. Under the circumstances of this case, equity demands that Plaintiff, the Class and the Court receive information sufficient to determine: (i) the amounts paid to the MSD by the Property Owners for the delinquent bills of the MSD Customers; and (ii) whether the MSD also collected the amounts paid by the Property Owners from the MSD Customers.

ANSWER: MSD denies the allegations contained in Paragraph 79 and further states it has not collected any "double payments" or failed to apply credits to any overpayments

80. In order to render complete justice for Plaintiff and the Class in one action, the Court should order a thorough and complete accounting by the MSD of the identity, extent and duration of any liens, penalties and interest imposed by the MSD against the Property Owners and billing to and payments made by the MSD Customers for the same amounts paid by the Property Owners on their tax bills.

ANSWER: MSD denies the allegations contained in Paragraph 80.

**AFFIRMATIVE DEFENSES**

1. Any allegation contained in the Complaint which is not specifically admitted is now hereby denied.

2. The actions and conduct of the MSD does not rise to a level of a constitutional

violation and Plaintiff suffered no infringement of their constitutional rights.

3. The actions and conduct of the Defendants were lawful and reasonable under the circumstances.

4. Plaintiff has failed to state a claim upon which relief may be granted.

5. Plaintiff's fraud count fails as a matter of law as established in MSD's contemporaneously filed Motion to Dismiss and accompanying Memorandum Brief.

6. The Defendants are entitled to qualified immunity because their actions were objectively reasonable under the circumstances, in accordance with MSD's billing practices, an official policy, and did not violate any clearly established constitutional right.

7. Plaintiff's damages, if any, were caused by their own wrongful, negligent and/or omissions related to establishing payment of utility services within Plaintiff's contract(s) with its tenant(s).

8. No act or omission committed by the MSD was the proximate cause of the damage, if any, incurred by the Plaintiff.

9. Plaintiff failed to mitigate his damages, if any.

10. To the extent Plaintiff asserts any state law claim, Defendants are not liable to Plaintiff due to one or more actions or conditions set forth in I.C. 34-13-3-3 and/or Indiana common law.

11. To the extent Plaintiff asserts any state law claim against Defendants, said claim is barred by I.C. 34-13-3-5.

12. Plaintiff's claims are barred by collateral estoppel, laches, waiver, and/or unclean

hands.

13. Plaintiff's claims for money damages are barred by the Eleventh Amendment to the United States Constitution.

14. Plaintiff's claims are barred by any applicable statute of limitations.

15. Plaintiff received all process to which he was entitled under the United States Constitution and any applicable Indiana Code Section.

16. Defendants reserve the right to supplement, add to and/or amend these defenses as discovery and investigation continue.

WHEREFORE, Defendants pray the Court that Plaintiff take nothing by way of his Amended Complaint, for the costs of this action and for any and all other just and proper relief.

**Respectfully submitted,**

**DEFUR VORAN LLP**

BY/s/   Scott E. Shockley
Scott E. Shockley #2513-18
Matthew L. Kelsey #29313-49
400 S. Walnut Street Suite 200
Muncie, IN 47305
Telephone: 765-288-3651
Facsimile: 765-288-7068
E-mail: sshockley@defur.com
E-mail: mkelsey@defur.com

## CERTIFICATE OF SERVICE

       I hereby certify that on the 14th day of August, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Southern District of Indiana, Indianapolis, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

       BY /s/ Scott E. Shockley
Scott E. Shockley #2513-18
Matthew L. Kelsey #29313-49